IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MAXIM AVILOV | : | CIVIL ACTION |
| | : | |
| v. | : | No. 26-2431 |
| | : | |
| BRIAN MCSHANE, *Field Office* | : | |
| *Director of Enforcement and Removal* | : | |
| *Operations, Philadelphia Field Office,* | : | |
| *Immigration and Customs Enforcement,* | : | |
| *In his official capacity*, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                      **July 6, 2026**

Petitioner Maxim Avilov brings this petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241, challenging his detention by the Department of Homeland Security (DHS) under 8

U.S.C. § 1226(a). Avilov received a custody redetermination hearing before an immigration judge,

but he contends the hearing did not satisfy due process because the immigration judge failed to

provide a neutral and individualized assessment of the custody factors.  Because the record shows

that Avilov was afforded the process required by the Due Process Clause, his petition will be

denied.

**BACKGROUND**

Maxim Avilov is a native and citizen of Russia. Am. Pet. ¶ 25, Dkt. No. 19. He entered the

United States on a nonimmigrant visa in 2017 and has remained beyond his authorized period of

admission. *Id.* ¶ 26. On April 7, 2026, DHS arrested Avilov and charged him as removable under

8 U.S.C. § 1227(a)(1)(B). Gov't's Resp. 3, Dkt. No. 21. He is detained pursuant to 8 U.S.C. §

1226(a). *Id.* at 4.

After his initial detention determination by DHS, Avilov received a custody

redetermination hearing before an immigration judge on May 7, 2026. Am. Pet. ¶¶ 32-33. Before

the hearing, he submitted a 361-page evidentiary packet. *Id.* ¶ 34. The packet included evidence of his employment authorization, asylum filings, property ownership, mortgage payments, business ownership, vehicle financing, professional certifications, his wife's employment, his children's school records, affidavits regarding his character, and federal tax records. *Id.* He also identified a proposed sponsor witness who was available to testify by video. *Id.* ¶ 35.

At the hearing, Avilov's counsel argued he was neither a danger to the community nor a flight risk. Bond Hr'g Tr. 3:8-22, Dkt. No. 15-1. Counsel emphasized that Avilov had no criminal history, had lived and worked in the United States for years, paid taxes, owned real property, operated a business, had a wife and children in the United States, and was pursuing asylum. *Id.* DHS opposed release on the ground that Avilov was a flight risk. *Id.* at 3:24-4:9. DHS relied on Avilov's prior entries into the United States, his lack of U.S. citizen relatives, a pending Russian criminal matter, and an attempted firearm purchase that did not result in charges. *Id.*

The immigration judge denied bond. *Id.* at 12:1-5. She found that Avilov failed to prove he was not a flight risk and that no bond amount would mitigate that risk. *Id.* After hearing argument from Avilov's counsel and DHS and discussion about Avilov's fear of persecution in Russia, the judge found:

> [T]he Court can't find that [Avilov] has a viable chance of success on an I-589 application at this point without additional information. I know that this is not a merits hearing, but I can't simply make that finding at this point.
>
> What I do know is that [Avilov] has limited ties to the United States. The fact that his family is here and also seeking asylum is relevant, but they're here unlawfully as well, seeking asylum. So that's not really ties to the United States. Certainly, if they are granted asylum, then that's one thing. But at this point in time, I don't have any information that the wife's asylum application has been granted or that there's any movement from USCIS at this point.
>
> So I do have his brother—or one of his siblings—still resides in Russia. He does own his home, which is relevant, and business, I believe, is what was said. It does look like he appeared, I can't tell. I don't know, there's no evidence with regards

to whether he would appear for proceedings because the prior case was terminated for failure to prosecute.

. . .

I have sufficient enough concerns about this claim and his multiple returns to and from Russia after the date of these supposed anti-government posts that I'm going to deny bond. I going to find that no amount of bond will mitigate his risk of flight.

*Id.* at 10:4-12:5 (cleaned up).

Avilov filed his Amended Petition on May 26, 2026, asking the Court to find the bond hearing constitutionally inadequate and to order release or a new custody redetermination hearing. At the time of the filing, Avilov reserved the right to appeal to the Board of Immigration Appeals (BIA), and the immigration judge's order listed an appeal deadline of June 8, 2026. Bond Hr'g Order, Dkt. No. 14-1.

**JURISDICTION**

Federal district courts have habeas jurisdiction over § 2241 petitions that raise constitutional challenges to detention. *Demore v. Kim*, 538 U.S. 510, 522–23 (2003); *Khalil v. President, United States,* 164 F.4th 259, 273 (3d Cir. 2026) (finding the district court "correctly held that it had habeas jurisdiction over [the petitioner's] petition"); *see also INS v. St. Cyr*, 533 U.S. 289, 301 (2001) ("At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.").

Section 1226(e) does not bar review of Avilov's claim. Section 1226(e) precludes review of the Attorney General's discretionary judgment regarding detention or release under § 1226. 8 U.S.C. § 1226(e). It does not, however, bar constitutional challenges to the procedures used to detain a noncitizen. *See, e.g., Jennings v. Rodriguez*, 583 U.S. 281, 295–96 (2018) (holding a constitutional challenge to "the extent of the Government's detention authority" is not a challenge

to its discretionary judgment); *Demore*, 538 U.S. at 516–17 (holding a constitutional challenge to "the statutory framework that permits [petitioner's] detention" is not a challenge to a discretionary judgment by the Attorney General). Thus, the Court may consider whether the custody redetermination hearing was constitutionally adequate. *See Quinteros v. Warden Pike Cnty. Corr. Facility*, 784 F. App'x 75, 78–79 (3d Cir. 2019) (finding that courts may review "the adequacy of process" that a petitioner receives at an immigration bond hearing).

**DISCUSSION**

Avilov argues the immigration judge failed to provide an individualized custody determination because she focused on the perceived weakness of his asylum claim, did not meaningfully engage with the record, declined to hear his proposed sponsored witness, and reached a predetermined result. Am. Pet. ¶¶ 36–38. The Government contends the petition should be denied because the hearing satisfied the Due Process Clause and Avilov has not exhausted BIA review. Gov't's Resp. 4-8. The Court agrees with the Government that the immigration hearing was constitutionally sufficient.

Section 1226(a) authorizes the Attorney General to arrest and detain a noncitizen pending a decision on removal and permits release on bond or conditional parole. 8 U.S.C. § 1226(a). After DHS makes an initial determination to detain a petitioner, the petitioner may seek review of that determination by an immigration judge and the BIA. 8 C.F.R. § 1236.1(c); *id.* § 1236.1(d)(1) ("After an initial custody determination by the district director . . . the respondent may . . . request amelioration of the conditions" by application to an immigration judge.); *id.* § 1236.1(d)(3) ("An appeal relating to bond and custody determinations may be filed to the [BIA]."). In assessing bond under § 1226(a), an immigration judge may consider a noncitizen's fixed address, length of residence, family ties, employment history, record of court appearances, criminal record,

immigration history, attempts to flee, manner of entry, and any other probative circumstances. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) (citing *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)); *Castillo Reyes v. Rose*, 820 F. Supp. 3d 343, 352 n.7 (E.D. Pa. 2026).

In the Third Circuit, a constitutionally adequate immigration bond hearing requires at least three procedural protections: the detainee "(1) is entitled to factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) must be allowed to make arguments on his or her own behalf; and (3) has the right to an individualized determination of his [or her] interests." *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022). "A decisionmaker must 'actually consider the evidence and argument that a party presents'" and may not act as a rubber stamp. *Abdulai v. Ashcroft*, 239 F.3d 542, 549–50 (3d Cir. 2001) (citations omitted) (discussing BIA's review of an asylum claim).

The record shows that Avilov received the procedural protections identified in *Ghanem*. First, the hearing involved factfinding on a record before the immigration judge. Avilov submitted evidence, including documentary evidence concerning his family, residence, business, taxes, employment authorization, asylum filings, and the Russian criminal case. Second, Avilov's counsel argued on his behalf. His counsel summarized the evidence and addressed DHS's assertions about the Russian criminal case and attempted firearm purchase. Third, the immigration judge made an individualized determination. She discussed Avilov's multiple entries and returns to Russia, the posture of the asylum filings, the Russian criminal case, the family's immigration status, the existence of a sibling in Russia, and Avilov's home and business ownership. The immigration judge then denied bond on the ground that Avilov was a flight risk.

Avilov, however, contends the hearing was inadequate because immigration judge focused too heavily on the asylum claim and did not discuss the documentary evidence in enough detail.

He also argues the immigration judge should have called his sponsor witness. While the immigration judge questioned the viability of Avilov's asylum claim, expressed skepticism about his fear of return because of his prior travel to and from Russia, and did not call his proposed sponsor witness, those facts do not establish a constitutional violation. Under *Guerra*, the immigration judge may consider the strength of a noncitizen's claim for relief as  part of the custody determination. *Guerra*, 24 I. & N. Dec. at 40 ("Immigration Judges may look to a number of factors in determining whether a [noncitizen] merits release from bond" and have "broad discretion in deciding the factors that [they] may consider in custody redeterminations."). The immigration judge, furthermore, did not purport to adjudicate the asylum claim. She expressly noted that the asylum claim would have to be resolved at a merits hearing. Bond Hr'g Tr. 10:4-8. The transcript also shows that she considered evidence she deemed relevant to flight risk, including positive equities such as home and business ownership, before concluding that Avilov was a flight risk. Moreover, Avilov has not identified specific noncumulative testimony that his proposed sponsor witness would have provided. Avilov, therefore, has not shown the hearing was fundamentally unfair.

In the context of an immigration custody redetermination hearing, the Due Process Clause of the Constitution requires a meaningful opportunity to present evidence and argument. *See Ghanem*, 2022 WL 574624, at *2. It does not require the immigration judge to discuss every document or accept Avilov's framing of the evidence. Avilov may disagree with the immigration judge's weighing of the evidence, but the record shows the hearing complied with the procedural protections required by *Ghanem* and the immigration judge did not act as a rubber stamp.[1] The

---

[1]    To the extent Avilov argues the immigration judge should have weighed the evidence differently, "that argument challenges a discretionary determination that [this Court] may not review." *Ghanem*, 2022 WL 574624, at *2 (citing 8 U.S.C. § 1226(e)).

Court therefore finds the hearing on May 7, 2026, did not violate Avilov's right to due process.[2]

And because the petition fails on the merits, the Court need not decide whether Avilov failed to

exhaust BIA review.

**CONCLUSION**

Accordingly, the Court will deny Petitioner's Petition for a Writ of Habeas Corpus. An

appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.

---

[2]     As Avilov points out in the Amended Petition, in *Zheng v. Rokosky*, another district court in the Third Circuit held that a bond hearing was fundamentally unfair where the immigration judge failed to consider relevant evidence and made unsupported findings regarding the petitioner's risk of nonappearance. No. 26-cv-01689, 2026 WL 800203, *4–7 (D.N.J. Mar. 23, 2026). The court reached that holding because the immigration judge "provided no analysis whatsoever and gave no indication of the factual basis for her decision." *Id.* at *6. That is not the case here. The record shows the immigration judge heard argument, asked questions, considered Avilov's Russian criminal case, addressed both negative and positive factors, and stated a reason for denying bond. Therefore, *Zheng* is factually distinct from the present case.